UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CANDYCE L. SHELLMAN,

        Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.

Case No. C11-1203-RAJ-BAT

**REPORT AND RECOMMENDATION**

Candyce Lynn Shellman seeks review of the denial of her Disability Insurance Benefits application. Ms. Shellman contends the ALJ erred by (1) failing to include functional limitations caused by hand tremors in assessing her residual functional capacity at step-four, and (2) incorrectly assessing her credibility. Dkt. 13. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

## BACKGROUND

Ms. Shellman is currently 59 years old, has an 11th grade education and a dental assistant technical degree; she has worked as an office and apartment manager, office assistant, telephone solicitor, patient scheduler, and front office worker.[1] On January 23, 2008, she applied for

---

[1] Tr. 31, 119, 138.

REPORT AND RECOMMENDATION - 1

benefits, alleging disability as of July 31, 2007.[2] Her application was denied initially and on reconsideration.[3] After conducting a hearing on January 28, 2010, the ALJ found Ms. Shellman not disabled.[4] As the Appeals Council denied Ms. Shellman's request for review, the ALJ's decision is the Commissioner's final decision.[5]

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[6] the ALJ found:

**Step one:** Ms. Shellman had not worked since July 31, 2007.

**Step two:** Ms. Shellman had the following severe impairments: degenerative disc disease – cervical and thoracic; and mild essential tremor.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[7]

**Residual Functional Capacity:** Ms. Shellman could perform sedentary work except due to pain, she could occasionally balance, stoop, kneel, crouch and crawl, climb using ramps or stairs; she could never climb using ropes or scaffolds; she must avoid concentrated exposure to vibration hazards such as machinery and heights.

**Step four:** Ms. Shellman could perform her past work as a patient scheduler, telephone solicitor and front office worker and is therefore not disabled.

Tr. 9-21.

## DISCUSSION

**A.    The ALJ's residual functional capacity assessment**

The parties agree Ms. Shellman's "mild essential tremor" is a severe impairment. Tr. 14. The parties disagree whether the ALJ properly evaluated the functional limitations caused by this

---
[2] Tr. 119.
[3] Tr. 66, 70.
[4] Tr. 9-25.
[5] Tr. 1.
[6] 20 C.F.R. §§ 404.1520, 416.920.
[7] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

impairment in assessing Ms. Shellman's residual functional capacity. Ms. Shellman contends the ALJ erred in finding her tremor caused no limitations. *Id*. at 8 (referring to Tr. 19). The Court agrees. In assessing a claimant's residual functional capacity, the ALJ must assess all relevant evidence, including medical reports, and must also consider the limitations and restrictions caused by the claimant's medically determinable impairments. *See* SSR 96-8p, 20 C.F.R. § 416.945(a).

Here the ALJ gave great weight to the opinions of non-examining doctors, Robert Bernardez-Fu, M.D., and Robert Hoskins, M.D., that Ms. Shellman had "no limitations in the ability to perform hand manipulations including reaching, handling, fingering or feeling." Tr. 19-20. Based on these opinions, the ALJ found there was no evidence showing Ms. Shellman's tremors are of such frequency or severity as to prevent her from performing "normal daily activities." Tr. 20. The ALJ's finding is unsupported.

First, in 2005, examining doctor Joyce Mauk, M.D., opined Ms. Shellman's coordination was affected by "mild to moderate tremor" and that "this will be worse with stress." Tr. 226. An ALJ should give more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another doctor, an examining doctor's opinion may be rejected only for "clear and convincing reasons." *Id*. at 830-31. Where contradicted, an examining doctor's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation of the facts and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Here, the ALJ failed to explain whether she was accepting or rejecting Dr. Mauk's opinions that Ms. Shellman had mild to moderate tremors affecting her coordination. Having given no reasons to reject Dr. Mauk's opinions, the ALJ erred. The ALJ's treatment of Dr. Mauk's opinions is also fractured. On one hand, the ALJ gave Dr. Mauk some credence by using her opinions as a reason to reject treating doctor Raj's opinion that Ms. Shelman's tremors were incapacitating. Tr. 20. On the other hand, the ALJ implicitly rejected Dr. Mauk's opinions by adopting the non-examining doctors' opinions that the tremors cause no limitations. This fractured treatment amplifies the ALJ's error in failing to explain why she was rejecting Dr. Mauk's opinions that the tremors were mild to moderate. The Court notes, too, that to the extent the ALJ relied on the opinions of the non-examining doctors to reject Dr. Mauk's opinions, the ALJ erred. The opinion of a non-examining doctor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

Second, even if the Court disregarded the ALJ's failure to explain why she was rejecting Dr. Mauk's opinions, the opinions of the non-examining doctors do not support the ALJ's finding the tremors caused no limitations. Non-examining doctor Robert Hoskins, M.D., affirmed the opinion of Disability Examiner Tammy Rollins who in May, 2008 reviewed Ms. Shellman's medical records. Neither Ms. Rollin's review nor Dr. Hoskin's affirming opinion discusses or mentions Ms. Shellman's hand tremors. *See* Tr. 245, 283. This stands in contrast to non-examining doctor Bernardez-Fu's opinion which specifically discussed Ms. Shellman's tremors. As there is nothing showing Ms. Rollins or Dr. Hoskins were aware of the hand tremors, considered them, or were in a position to give an opinion as to what limitations the tremors caused, their opinions do not support the ALJ's finding that the tremors caused no

1 limitations.

2 Non-examining doctor Bernardez-Fu opined there was no evidence showing Ms.
3 Shellman's tremors "are of such frequency or severity as to prevent her from performing normal
4 daily activities." Tr. 325. The ALJ relied on this opinion in finding the tremors caused no
5 limitations. Tr. 20. The problem with this is, without more specificity, the ability to perform
6 "normal daily activities" do not alone establish a claimant's residual functional capacity. For
7 instance, a person might be able to do many normal daily activities even with significant fine
8 motor skill limitations such as writing, working with small parts or delicate items. But while
9 such a person might have the capacity to perform many "normal" daily activities, that person's
10 capacity to perform work that required fine motor skills such as rapid and accurate note-taking,
11 or assembling items with small parts, might be severely limited. Here Dr. Mauk opined Ms.
12 Shellman's hand tremors affected her coordination and Ms. Shellman testified her tremors made
13 it difficult for her to write. Tr. 43. Hence, Dr. Bernardez-Fu's opinion the tremors did not
14 prevent Ms. Shellman from performing "normal daily activities" is not substantial evidence that
15 her tremors caused no limitations to her ability to work. This error was not harmless because the
16 type of work the ALJ found Ms. Shellman capable of performing, such as scheduler or front
17 office worker, would involve writing.

### B. Credibility of Ms. Shellman's testimony

Ms. Shellman argues the ALJ improperly discounted her testimony about how her pain
limits her. Dkt. 13 at 11. As there is no indication Ms. Shellman was malingering, the ALJ must
provide "clear and convincing" reasons for rejecting her testimony. *Smolen v. Chater*, 80 F.3d
1273, 1283-84 (9th Cir. 1996). The ALJ may consider "ordinary techniques of credibility
evaluation" including inconsistencies between testimony and conduct, daily activities, work

record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Id.*

Here, the ALJ discounted Ms. Shellman's pain testimony for two reasons, neither of which is supported by substantial evidence. The ALJ first discounted Mr. Shellman's testimony finding it was "not consistent with her actual range of activities." Tr. 18. The ALJ reached this conclusion based on Ms. Shellman's written "function report-adult" in which the ALJ found Ms. Shellman was "independent in personal care," prepared meals, did laundry for her husband, and light household chores, shopped, drove car twice a week, paid bills, visits a senior friend, and likes to go to the beach. The ALJ concluded the function report showed Ms. Shellman was able to engage in a wider range of activities than alleged and that her physical conditions was not as severe as she claimed. Tr. 18. The function report shows otherwise. It shows Ms. Shellman can perform the activities the ALJ highlighted, but only with significant limitations.

For instance, Ms. Shellman stated she could perform, with rest breaks, daily activities such as running errands, fixing dinner and doing the laundry but only "if I'm not in major pain. If I am then it's usually a full day of bed treating my pain and sometimes a trip to the doctor or chiropractor." Tr. 156. She stated she "[tries] to fix lunch and dinner for [my husband] and wash and dry his clothes. Many days he has to do for himself due to my contending with pain." Tr. 147. She acknowledged she could go outside and get around but that "if [she] has a migraine or severe neck pain, [she] can be in bed for a day or a couple of days." Tr. 159. She noted she could pay bills but it took longer (Tr. 160), that she had trouble sitting for long periods of time (*Id.*) and that she has missed many social activities due to pain. Tr. 161.

By turning a blind eye to these limitations, the ALJ painted a picture of a claimant who appeared able to function fairly normally and whose pain did not cause significant limitations.

The record shows the picture the ALJ painted of Ms. Shellman's range of activities was an inaccurate or incomplete picture, and that while Ms. Shellman was attempting to perform "normal" activities of daily living, she was limited in doing so. The ALJ thus erred in discounting Ms. Shellman's testimony as inconsistent with her "actual range of activities."

The ALJ next discounted Ms. Shellman's testimony finding "the objective medical evidence" does not support her testimony. Tr. 18. Ms. Shellman argues the ALJ "applied the wrong legal standard" in rejecting her testimony on this basis. Dkt. 13 at 15. An ALJ must apply a two-step analysis in evaluating a claimant's testimony regarding subjective symptoms such as pain. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281 (*citing Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. The ALJ found Ms. Shellman's "medically determinable impairment could reasonably be expected to cause some of the alleged symptoms." Tr. 17.

Once a claimant produces medical evidence of an underlying impairment, as Ms. Shellman did in this case, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (en banc) (citing *Cotton*, 799 F.2d at 1407). Hence, to the extent the ALJ rejected Ms. Shellman's testimony based on the grounds the objective medical evidence did not corroborate her claims, the ALJ erred. The Commissioner does not argues otherwise but contends the ALJ properly evaluated Ms. Shellman's credibility in light of the medical record, citing to SSR 96-7p and 20 C.F.R. § 1529(c)(4). SSR 96-7p requires the ALJ consider the entire case record, including

medical records, but reaffirms "an individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." Section 404.1529(c)(4) focuses on how the Commissioner determines the extent to which pain affects a claimant's capacity to perform work. That section, however, does not permit the ALJ to reject a claimant's pain testimony because the objective medical evidence does not support the testimony. Rather as noted in § 404.1529(c)(2) the ALJ must:

> always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.

Hence while the Commissioner correctly notes the ALJ must consider the entire medical record, the Commissioner incorrectly implies the ALJ may reject Ms. Shellman's testimony because the objective medical evidence does not substantiate her testimony.

The Court has also considered whether the Commissioner might be attempting to argue the medical record contradicts Ms. Shellman's testimony. The record however does not support this argument. Rather, the record shows Ms. Shellman has suffered from pain associated with neck, back and hip problems for many years. Dr. James Prichett found she had significant degenerative changes in her cervical spine, but not overly severe lumbar and thoracic changes. Tr. 257. Her EMG studies show mild to severe and very severe elevations (Tr. 214), and her thermal studies show mild to severe asymmetry. *Id*. Due to pain, Ms. Shellman sought regular treatment including physical therapy, (Tr. 234), chiropractic care (Tr. 246), hip injections (Tr. 265), medial branch radiofrequency neurotomy (Tr. 269), joint injections (Tr. 271); and branch

blocks. Tr. 275.  One of her treating doctors, Dr. Jeffrey Garr, M.D., commented Ms. Shellman's symptoms are not dangerous but that made the comment in the context of whether surgery was recommended, not whether her condition was minor or that her pain complaints were unfounded. Tr. 284.  To the contrary, Dr. Garr documented in his notes Ms. Shellman's pain complaints and rather than disregarding the complaints, he began to investigate its causes and made various treatment recommendations.  *See* Tr. 284-96.  Dr. Garr's  reports that Ms. Shellman medical condition caused her pain do not stand alone and are repeated by other medical professionals who treated Ms. Shellman.  *See*  (Burlington Family Practice) Tr. 299-317; (Dr. George Raj, M.D.) Tr. 355-65.  In sum, as the ALJ failed to give specific findings stating clear and convincing reasons to reject Ms. Shellman's testimony, the ALJ erred.

**C.    Remand for benefits or further proceedings**

In her opening brief Ms. Shellman requested the matter be remanded for benefits (Dkt. 13 at 2); in her reply she requested remand for further proceedings.  Dkt. 16 at 12.  The Court may remand for an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).  This occurs when:  (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.  *Id*. at 1076-77.  Here, the effect of Ms. Shellman's tremors on her residual functional capacity is unresolved and Ms. Shellman's credibility must be reassessed.  As both of these issues are for the ALJ to develop and evaluate, the matter should be remanded for further proceedings.

# CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings. On remand, the ALJ should (1) reevaluate the medical evidence regarding Ms. Shellman's tremors and develop the medical record as necessary; (2) reevaluate Ms. Shellman's testimony; (3) reassess Ms. Shellman's RFC; and (4) reassess steps four and five of the sequential evaluation process utilizing a vocational expert as deemed appropriate.

Objections, if any to this Report and Recommendation must be filed and served no later than **March 29, 2012**. If no objections are filed, the matter will be ready for the Court's consideration on March 30, 2012. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Responses to objections must be filed no later than 14 days after being served with objections. Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 15th day of March, 2012.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge